Alvin Margolius v. Commissioner.
Margolius v. Commissioner
Docket No. 17430.
United States Tax Court
1950 Tax Ct. Memo LEXIS 186; 9 T.C.M. (CCH) 433; T.C.M. (RIA) 50133; June 2, 1950
*186 Petitioner, his wife, and another in 1937 entered into a partnership agreement by which petitioner transferred to his wife a half interest in a partnership manufacturing cotton baling cloth. The wife then owned 50 per cent of the business and each of the original partners 25 per cent. The purpose of adding the wife as a partner was to increase the borrowing capacity of the business, which was largely dependent upon borrowed funds for working capital. Held, the partnership was formed for a valid business purpose and petitioner's wife had a bona fide interest therein in 1944. Fred F. Ames, C.P.A., 84 30th St., Newport News, Va., for the petitioner. Paul E. Waring, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in petitioner's income tax for the calendar year 1944 in the amount of $3,477.90. The deficiency arises from respondent's action in adding to the net income disclosed in petitioner's return additional income of $7,975.26 for the reason, as stated in the deficiency notice, that - "* * * the purported interest of your wife in Reliance Bagging Company (partnership) is without substance; *187 such interest in reality being yours, has been included in your income." Findings of Fact Petitioner is an individual residing in the City of Norfolk, Virginia. His income tax return for 1944 was filed with the collector of internal revenue for the district of Virginia at Richmond, Virginia. For some years prior to 1937 petitioner and Elisha T. Sykes conducted a business as a partnership under the name of the Reliance Bagging Company (hereinafter referred to as Reliance). Petitioner's interest in this partnership was 75 per cent and that of Sykes 25 per cent. Reliance engaged in the spinning, weaving, manufacture and sale of woven material used in baling cotton. The raw material used in the manufacture of the baling cloth was largely imported from abroad and usually financed by sight draft. On June 22, 1937, petitioner, Elisha L. Margolius, his wife, and Sykes entered into a partnership agreement, effective as of January 1, 1937, by which petitioner transferred to his wife a half interest in the business of Reliance. On the completion of the transfer, the capital interests of the three partners in Reliance were as follows: Alvin Margolius
(25%)
$13,859.79
Elise L. Margolius
(50%)
27,719.58
Elisha T. Sykes
(25%)
13,859.79
Total Net Worth
$55,439.16
*188 The capital interest of Elise in the amount of $27,719.56 represented a gift to her of two-thirds of the interest of petitioner in the old partnership. Elise did not contribute to the new partnership any capital originating with her. The partnership agreement contained the further provisions: (1) that the profits and losses of the partnership should be divided in proportion to the above partnership interests; (2) that no change would be made in the management and policies of the business as a result of the addition of Elise as a partner; (3) that in the event of disagreement on management and policy a joint decision by petitioner and Sykes would be binding upon Elise. The purpose of adding Elise as a partner in the business was to increase the borrowing capacity of Reliance. Elise had good connections with the officers of the National Bank of Commerce of Norfolk (hereinafter referred to as the Bank) on which Reliance depended for its line of credit. Her connections there were due to her wealthy and influential family. In 1937, Reliance borrowed $73,000 for working capital as contrasted with peak borrowings in 1936 of approximately $20,000. 1937 proved a very successful year *189 for Reliance. On January 28, 1938, Elise signed the following continuing guaranty in favor of the Bank for all liabilities of Reliance, direct or indirect, up to the sum of $70,000: "FOR VALUE RECEIVED, the undersigned guarantees to NATIONAL BANK OF COMMERCE OF NORFOLK, Norfolk, Virginia, its successors or assigns, all liabilities however evidenced, now existing and/or hereafter contracted, direct or indirect, of RELIANCE BAGGING COMPANY, not to exceed, however, at any one time, the sum of Seventy Thousand ($70,000) Dollars, and further agree that in the event of nonpayment of said liabilities and/or any of them, as the same become due and payable, to pay the same with all interest thereon, and all expenses of collection, including attorney's fee, if incurred, to the said National Bank of Commerce of Norfolk, its successors or assigns, at once. "The undersigned hereby waives the benefit of her homestead exemption as to this obligation; waives acceptance of this guaranty; waives presentment, demand, protest, and notice as to the evidences of such liability, and waives the application of the statute of limitations. "It is understood and agreed that this is a continuing guaranty *190 and contract so long as any liability of the said Reliance Bagging Company to the said National Bank of Commerce of Norfolk, its successors or assigns, shall remain unpaid, and it is further understood and agreed that the liability of the said Reliance Bagging Company to the said National Bank of Commerce of Norfolk, its successors or assigns, may be extended or renewed from time to time without any notice to the undersigned." The guaranty remained on file with the Bank throughout the existence of the partnership. After the formation of the new partnership, Sykes continued to act as superintendent and general foreman of the plant in charge of all labor and machinery. Approximately 30 employees were used by Reliance in the manufacture of its finished product. Petitioner handled all the finances of Reliance. He signed all the checks drawn by the partnership. He purchased the raw materials used in Reliance's product, contacted customers and prospective customers and handled most of the minimum amount of office work that the business entailed. Upon becoming a general partner in 1937, Elise took charge of the office when petitioner was out of town on business. She participated in *191 consultations on questions of policy and management among the partners and conferred with petitioner on establishing the prices at which Reliance sold its finished bagging. During the year 1944, petitioner received $3,000 in rent from Reliance on a building owned by him and rented to the partnership. He also drew a salary of $2,400 per year but made no withdrawals from his partnership interest. Sykes in 1944 $600withdrew from his partnership interest in addition to his salary of $2,400 per year. Elise in 1944 withdrew $2,664.82 from her partnership interest in Reliance. Most of this sum was used to pay income taxes. She did not draw a salary from the partnership as she had no need of the funds for living expenses. She permitted her share of the partnership profits to remain in the business in order to increase its working capital with the object that its purchases could be financed with a minimum of borrowing. In 1946, the partnership was liquidated for the reason that the war had rendered it impossible to obtain raw materials from former foreign sources and because competition with inland mills proved unprofitable. The partnership of petitioner, Elise, and Sykes was a bona fide *192 partnership entered into for business purposes. Opinion ARUNDELL, Judge: The respondent determined that the interest of petitioner's wife in the business of Reliance was without substance and that the 1944 share of the profits attributed to her should, therefore, be taxed to petitioner. Our ultimate finding of fact shows that the partnership was not a sham but was entered into for a business purpose. Accordingly, the respondent's determination must be disapproved. Cf. . The business success of Reliance was dependent in large measure upon its ability to obtain borrowed capital to finance its imports of raw materials. Prior to 1937, the peak borrowings of Reliance to finance its imports occurred in 1936 and were approximately $20,000. An expansion of its business in 1937 caused Reliance to require large additional borrowings. At the Bank upon which Reliance depended for its line of credit, petitioner's wife, Elise, had good connections because of her wealthy and influential relatives. To improve the credit standing of Reliance and to enable it to increase its bank loans which were necessary for working capital, petitioner gave *193 his wife a half interest in the partnership, leaving him with only a quarter interest. By means of the addition of Elise as a partner, Reliance was enabled to considerably expand its borrowings in 1937. The borrowings increased in that year to $73,000, more than three times the peak borrowings of prior years. In , we upheld a partnership in which admission of the petitioners' wives as partners had been deemed necessary to secure bank credit for the business. We there said: "The purpose in forming the partnership was the reasonable and necessary one of securing substantial loans from the banks in order to make the current financial position of the business more secure and to protect the credit standing of the business. Although other means might have been employed to accomplish this purpose, the partners in good faith believed that the formation of the partnership was the most advantageous one for the business. The accomplishment of this purpose is a fact which may not be disregarded. ; certiorari denied, ." Similarly, here, we glean from the whole record *194 a bona fide intent on the part of petitioner, Elise, and Sykes to form a valid partnership in 1937 in the belief that the addition of Elise as a partner would greatly improve the borrowing ability of the old partnership. In view of the importance of bank credit to the financial success of the business and in view of the showing that the borrowings of the business did substantially increase after she became a partner, we cannot say that the reasons for including her as a partner were without foundation. The request by the Bank that Elise execute the guaranty which we have set forth in full in our findings of fact shows that it attached undoubted significance to her inclusion in the business as a partner. Prior to becoming a partner in 1937, Elise had not taken any part in the business of Reliance. After she became a partner, she took over petitioner's supervisory activities when he was out of town. She conferred with the other two partners on questions of policy and management, including such questions as the price at which the product of the business should be sold. Also, she furnished valuable assistance to petitioner in his sales promotion work. Her services, while perhaps not *195 in themselves sufficient to support a finding that a bona fide partnership existed, do indicate that she was fully aware of the significance of the partnership agreement which she entered into in 1937 and that she did not treat her interest therein lightly. Even had she rendered no services at all, we should still feel constrained to recognize the partnership, as the testimony of petitioner and his wife convinces us that the petitioner's gift to his wife in 1937 of a half interest in the business (thus leaving him with but a quarter interest therein) was a bona fide one and that the parties thereafter truly intended to carry on the business as partners and that they acted in accord with this intent. Cf. . The determination of the Commissioner is reversed. Decision will be entered under Rule 50.